And move on to our fourth case this morning, National Association for Rational Sexual Offense Laws v. Hughes. Yes, come on up, Mr. Weinberg. May it please the Court, this case is about the ability of an individual who is on mandatory supervised release to use erectile dysfunction medication while on supervision. An Illinois statute prohibits the use of erectile dysfunction medication. Plaintiffs contend that the statute violates individual's substantive due process rights and Eighth Amendment rights and sought to have the statute declared to be unconstitutional through Section 1983 action. The district court dismissed plaintiff's claim based on this court's decision in Williams v. Wisconsin in which this court, based on Hack v. Humphrey, held that a condition of supervision must be challenged via a habeas petition and not via Section 1983. Plaintiffs are here today to ask this court to reverse the district court's dismissal of plaintiff's complaint. To do so, this court must either overrule or narrow its reading of Williams v. Wisconsin. Before we get to that, would you address mootness because your client completed his supervision? That's true, Your Honor. He has completed his supervision. We don't think the case is moot because of the inherently transitory doctrine. Before we get there, when did he complete his mandatory supervision? April 29th, last month. He meets all the conditions of the inherently transitory doctrine. He had standing when he filed the complaint. He filed a motion for class certification, and there is a large class of people that are subject to the same statute that interferes with their constitutional rights. Did he challenge his underlying conviction? No. Can we go back to inherently transitory? Is the question before us whether he filed his complaint, by my review of the record, about halfway through his period of parole? Okay, so the year and a half mark, and he had three years to go. Is the question really for us whether anybody would be able to file a complaint and get to kind of the two prongs? You're saying he needs to get to class certification and be able to pursue a 1983 claim. The other side is saying he needs to file a habeas action. Either way, whoever is right about what the particular law is, we know what William says. The question is, can anybody get through those steps within, say, a three-year parole period? Is your position that nobody really could? I think it's questionable. It obviously depends on bureaucratic conditions, how long it takes to go through. In the habeas case, how long it takes to go through state court levels. And there is another plaintiff in this case, too, NARSAW, which is a national organization for reform of sex offender laws. And we think they have standing because many of their members are subject to the same restriction. So their claims are not moot. Now, we haven't named any other person other than the plaintiff Ridley, but there are people that we could name. Does that answer your question? Well, none of this is kind of developed anywhere because when the case was in the district court, his release date wasn't impending. It's been here for a while in briefing. So we don't really have any development of the main inquiry in the inherently transitory doctrine, which is whether any person's claim in this particular class that your client is seeking to represent would remain live for the duration of the suit. We don't really know. I don't know if this is significant, but one of the reasons that he wasn't able to bring this in a timely manner is that the government got four or five extensions and delayed filing the brief for six months in this appellate court. But for that, he could have gotten through this process, but these administrative delays made it impossible to bring this claim in a timely fashion. Right, but the inherently transitory doctrine looks at the proposed class and asks whether any person's claim within that class would suffice and remain live long enough to challenge this condition of probation or supervised release. So there are definitely people that are members of NARSOL that would be able to bring this in a timely fashion. So there are other plaintiffs available. Yes. Who could be substituted. Yes. In a new action. Yes. Even though your client's claim is now moot. We're looking at this doctrine that you've asserted that saves this claim from mootness, but if there are other plaintiffs available. There are other plaintiffs that could be substituted. I don't know that. I mean, there are members of NARSOL, a plaintiff, and the reason that there's other plaintiffs is that they're not under the one- or two-year or three-year MSR. They have lifetime MSR. And so these are members of the class two, I mean of a potential class, and they're members of NARSOL, and NARSOL is a plaintiff here. So I think if the case were remanded, we would name, you know, the people in NARSOL whose claims are not moot, if I'm understanding correctly. Well, the problem is none of this is really developed. We've got just, you know, like two paragraphs from you and one paragraph from the state actors here on mootness, which is a pretty skinny record on which to make a decision about mootness. We may need supplemental briefing on this. I'm happy to engage in that if the court wants it. As far as asking for this court to overrule Williams, there are four reasons that we believe Williams should be overruled. The first and the most important is that HEC only prohibits a constitutional challenge via 1983 when a favorable judgment would necessarily imply the invalidity of the individual's conviction or sentence. And here we are asking for this, finding a condition of supervised release unconstitutional would not in any way imply the invalidity of the underlying condition or sentence. Well, it's an attack on the sentence because conditions of release are part of the sentence. Whether they're mandatory conditions imposed as a matter of statute or discretionary conditions imposed by the court, they're all part of the judgment of conviction and part of the sentence. So it's an attack on the sentence. I guess I have two responses to that. One is it's a means of affecting the sentence. The sentence here is supervision. Not just supervision. It's supervision plus all the other conditions that are in the judgment, which include all the statutory conditions, and this one included. So I agree. It's not like a conditions of confinement suit by a prisoner for a random act of a prison guard or another inmate, et cetera. So I think that sentence has been interpreted by the Supreme Court in Wilkinson v. Dobson as meaning duration, not meaning duration of the sentence, not meaning every condition of the sentence, A. But, B, our belief is that the individual would still be under supervision even if one of the conditions were found to be unconstitutional. And so while it's modifying the terms of the supervision, it is not in any way undermining the sentence itself. You're seeking relief. Your client is seeking relief from a condition of his supervision, which is a challenge to his sentence. Because it's part of his sentence. It's a means. I think the Supreme Court in a recent case, a 2022 case, Nash v. Ward, is the strongest case for us that challenging a means of effecting a sentence is not effecting. It's not a means of effecting the sentence. It's part of the judgment that he has to comply with this condition because the statute says so. I think a bigger question for you is, I mean, I think a case like Thornton from the Ninth Circuit shows reasonable minds can disagree about some of these issues. But as a circuit, we have to overcome our inclination not to overturn circuit precedent, and you have to provide compelling justifications. Right. And I think that there's been intervening Supreme Court cases that suggest that challenging a condition of supervision is not challenging the sentence. And the best case, I think, for that is Nash, as I said, Nash v. Ward, in which a Georgia prisoner was sentenced to be executed. But he challenged via 1983, and the court said it was okay, the means by which that execution was to occur. And the court said, you're not changing the sentence. You are just changing – you're just challenging the means. In this case, it was a lethal injection means that caused pain. And so in the same way, I think by analogy, we are not challenging the supervision. This person will still be under supervision, but we are saying that the means of the supervision, one of the means is unconstitutional. And really here, all we're asking is that there be an individualized determination of whether a person can use erectile dysfunction. This is an absolute prohibition. I see my time is up. The court doesn't have any questions. Okay. Thank you. Thank you. Mr. Rush. Good morning, Your Honors. I'm Assistant Attorney General Caleb Rush, appearing on behalf of Defendant Appellee Latoya Hughes, the Director of the Illinois Department of Corrections. This appeal cannot succeed for three reasons. First of all, plaintiff's claims are moot. Second, the precedent of Williams v. Wisconsin should be upheld. And third, plaintiffs have failed to stay at a claim of any constitutional violation. Each of these reasons is an independent and sufficient basis to affirm the district court's dismissal or to dismiss the appeal. I'll start with mootness. It's undisputed that Mr. Ridley's MSR or parole term is complete, and he has only argued one exception to mootness, which is the inherently transitory exception. We need to be clear about what the legal standard for this exception is because he cannot meet the first requirement for this exception. It's not about the duration of litigating the entire case. The inherently transitory exception is about is it uncertain that any member of the proposed class could even maintain a live controversy long enough for a judge to certify a class? That's quoting from this court's decision in Olson v. Brown. In Olson v. Brown, this court talked about a 90-day duration, 120-day duration. This exception to mootness, or it's really not an exception to mootness, it's a way of saving a claim from mootness in the class action context, is ordinarily applied in the pretrial detention context when prisoners are, I shouldn't say ordinarily, that's the most frequent iteration of it. When jail detainees are only in jail for a period of a couple of days to maybe a couple of months at most, and so it's that nature of that kind of detention that makes the inherently transitory doctrine or puts it into play. Exactly, Your Honor. And here what we're talking about is MSR conditions. So if we accept that they're out, that Mr. Ridley's claims are out, does the National Association's claims moot as well? At that point, NARSOL would have no standing because they have not ever identified to this court anybody who would have standing. And NARSOL only would have potential standing through members, you know, associational type standing. Say it one more time, the last thing you said I couldn't make it up. I'm sorry, Your Honor. That NARSOL's only, you know, NARSOL's an association. It would only have standing through a claim by a member. Well, two different things. Associational standing is one thing, third party standing is another. And the problem here is we don't have briefing on any of this stuff, and so it's a little hard to evaluate because it hasn't been briefed or argued. I think we're going to need supplemental briefs in this case. But to the response that you just gave, Judge Pryor, associational standing is something different than third party standing. And I'm not quite clear on what the plaintiff's argument is with regard to this National Association for Rational Sex Offense laws. You've talked about having other plaintiffs that they can substitute in, but there also seems to be some sort of a claim of associational standing lurking under the surface, and I'm not quite sure. Those are different things. I'm sorry, Your Honor. The fundamental point when it comes to the inherently transitory theory on mootness is, is this the type of claim where nobody is likely to have a claim that lasts long enough to rule on a class certification motion, 90 or 120 days? That's not this type of claim. We're talking about MSR terms under Section 5-8-1 of Illinois' MSR statutes. For Mr. Ridley's offenses, the MSR term is a mandatory minimum of three years up to life. I think the Olson case he identified was also three years. It was a different situation, but it was a three-year term that was at issue. But I want to move on from mootness now because I think there's indication from the bench that no matter what you say, the court is going to want to know more, and we deserve to know more on that important question. I want to ask you, how do you explain the district court's decision to dismiss with prejudice here? Everybody's highlighted Williams as the key case to pay attention to, and we said pretty clearly in Williams, although we didn't abide by it ultimately, but we did say these dismissals need to be without prejudice because the plaintiff needs to go file a habeas petition. Yes, Your Honor. If this case is not moot and if it's disposed of purely on the rule of Heck and Williams, then the dismissal should be affirmed, but it should be modified to be without prejudice. Now, on that issue of reaching the merits, and I'd like to return to the Williams precedent in a moment, but on that issue of reaching the merits, this case, like Williams, is an appropriate case to actually reach the merits and affirm the dismissal with prejudice. The merits were fully briefed below, contrary to the misstatement in the reply brief. This court has gone beyond threshold issues to address the merits in cases like Williams, also in the case cited in our brief, Jones v. Cummings, and there's a fundamental principle at stake here that the plaintiffs should not be allowed to unilaterally prolong unmeritorious litigation by just choosing not to support their case. For other issues on the merits, we stand on our brief. I'm prepared to answer questions, but I'd like to return to this question of the Williams precedent. There's no basis to revisit this precedent. There might be a basis if Williams was an outlier. It's not. The plaintiffs don't even argue that it is an outlier. Three other circuits have stated that habeas is the proper avenue to challenge parole conditions. Yes, the Ninth Circuit in Thornton reached a different result, but the Ninth Circuit itself said that its result was consistent with Drollinger and Williams in this circuit because the parole condition at issue in that case, the Ninth Circuit determined, was not part of the sentence. It might also be appropriate to revisit Williams if it worked a substantial injury, but it does not qualify for revisiting precedent in that sense. Mr. Williams could have litigated this case in state court starting in 2018 when he had cancer and when he had complications resulting from treatment. He could have litigated this case more than three years ago when his MSR or parole term started. The Illinois post-conviction statute allows people to introduce new evidence, to raise a theory that wasn't raised at trial. There's no special constitutional entitlement to counsel or attorney's fees in this process, even though counsel for indigent defendants is provided under the Illinois post-conviction statute. Also, the plaintiffs have not identified any sex offender who has attempted to challenge Section 7.10 through state remedies or through habeas. There's simply no working of a substantial injury here. And then the final point that I'd like to make is that Williams was correctly decided. It's compelled by the rule in Prisor and Heck. And that rule is, whether a claim would invalidate a conviction or sentence in whole or in part, it's clear that this parole condition is part of Ridley's sentence. This is not like the Nance v. Ward case, which was about the method of carrying out capital punishment. The Illinois statute, as the court is aware of the Illinois statute, says that the parole condition is part of the sentence. And plaintiffs have not disputed the case law that says that seeking to invalidate even part of a sentence will invoke the Heck bar. I would note that plaintiffs' view of this would invalidate not just Williams, but also Drollinger, this court's precedent going back to the 1970s. And so for all these reasons, we ask this court to either dismiss this appeal or to affirm the district court's dismissal. And we will be happy to submit supplemental briefing on witness. Thank you. Mr. Weinberg, anything further? You have run out of time. I'll give you a minute if you'd like to respond briefly. I'll respond briefly. I guess most importantly, if the court wants it, we'd welcome the opportunity to brief the issue of mootness. My friend said that the merits of this case were briefed fully below. They were not. Obviously, this was a motion to dismiss. My friend suggested that we had time to rule on the class certification motion. We didn't. This case was dismissed promptly. We filed the class certification motion, but there was no briefing on it. And this case, I think Williams is an outlier if the court actually looks at the case law. They had no other case. They've had 20 years. Williams decided in 2002, 2003, no other case in 22 years has agreed with the logic of Williams. Thank you, Your Honors. Thank you very much. Our thanks to all counsel. We'll take the case under advisement.